[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: POST-JUDGMENT MOTIONS TO MODIFY JUDGMENT RE: CUSTODY AND SUPPORT AND OBJECTION THERETO, VISITATION, TO ENJOIN,FOR ORDER AND FOR COUNSEL FEES (NOS. 266, 269, 274 AND 333)
The parties have filed numerous post-judgment motions which have involved ten days of hearing, ten witnesses including the parties and three of their children, two of those witnesses testifying twice. These motions involve the custody of two boys, now ages thirteen and fifteen and related support, together with the question of retroactivity of support modification. CT Page 5256-RRR
While it is customary for a trial court to announce its decision at the conclusion of its memorandum of decision, the court is going to vary that usual custom and present its ruling on these motions at the beginning of this memorandum.
Docket entry no. 266, Defendant's Motion to Modify Judgment, dated March 17, 1994, filed March 21, 1994: Granted
Docket entry no. 269, Defendant's Motion to Modify Judgment, dated March 29, 1994, filed March 30, 1994, identical to the prior motion: granted. Support ordered to be paid by the plaintiff to the defendant in the amount of $150 per week for both children.
Docket entry no. 273, Objection to Defendant's Motion to Modify Custody dated April 18, 1994: Overruled.
Docket entry no. 333, Plaintiff's Motion to Modify Visitation, Motion to Enjoin, Motion for Order and Motion for Counsel fees dated April 24, 1996: Denied.
Determination of arrearage: No arrearage.
On April 14, 1989, the parties' twenty-five year marriage was terminated by decree of dissolution entered before the Honorable Robert A. Fuller after a contested proceeding. (See Judge Fuller's Memorandum of Decision, docket entry no. 188, and judgment as amended, docket entry no. 207.) At that time, there was disagreement between the parties on the issue of custody, the plaintiff seeking sole custody of the minor children while the defendant was seeking joint legal custody. At that time, Judge Fuller found that it was in the best interests of the minor children, David Kane Parry, born November 4, 1980, and Steven Kane Parry, born March 10, 1983, then eight and six years of age, that their mother, the plaintiff, have sole custody and the defendant father to have reasonable and liberal rights of visitation. The court recognized that the proceeding was to make a determination in the best interests of the children pursuant to § 46b-56 of the General Statutes, which it proceeded to do. See Raymond v.Raymond, 165 Conn. 734, 741 (1974).
In January, 1994, the child David commenced living with his father on a trial basis. It was recognized by the parties that he was not doing well and having problems with his mother (see report of Mr. Donald G. Tolles, plaintiff's exhibit A). On March 21, 1994, the defendant's Motion to Modify Custody dated March 17, CT Page 5256-SSS 1994, was first filed. However, the motion needed to be served by citation and show cause order which was served upon the plaintiff on April 11, 1994. (See sheriff's return attached to original citation for contempt dated March 29, 1994, bearing docket no. 275.) These motions were noticed for hearing on April 18, 1994, at which time orders were entered by Ryan, J. for study of custody and visitation by Family Relations. (See order on docket entry no. 268 and page one of plaintiff's exhibit A — Mr. Tolles custody evaluation report.) On May 9, 1994, Judge Ryan ordered that the minor child David "stay with father without prejudice." Steven has continued to reside with his mother.
Section 46b-56 (b) of the General Statutes provides, in part, as follows: "In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of thechild if the child is of sufficient age and capable of forming anintelligent preference. . . ." (Emphasis supplied.)
As previously noted, David is fifteen years of age (will be 16 on November 4 of this year) and Steven is thirteen years of age. Both have expressed their desire to reside with their father. They are both of sufficient age and capable of forming an intelligent preference. As was stated by Ms. Walsh, Family Relations Counselor, in her report: "Steven is an intelligent, mature thirteen year old whose desires should be considered." (Children's exhibit 2, last page, second paragraph.) In her testimony, Ms. Walsh testified as follows:
 "Yes, Stephen, again, is — he's a very gifted teenager. He's intelligent, he's able to articulate very well his thoughts and feelings, his ideas, his frustrations, his upsets, and you know, he's doing well in school, he's doing well socially, and I think that given his — you know, you cannot always look at chronological age, but Stephen is definitely, in my opinion a mature 13 year-old whose given good reasons about why he would like to live with his father, and they are stated in my report."
As already noted, both boys have expressed their wishes to be in their father's custody. This has been voiced by each of them on the witness stand and on numerous occasions by their counsel throughout the hearing. CT Page 5256-TTT
David is best described in Ms. Walsh's custody report of July 16, 1996 as follows:
 David is described by Dr. Leven as a "fairly dysfunctional, fairly disturbed youngster. Despite having a superior intellect, David is severely underachieving in school with about a "D" average. He dresses in black clothing and presents as disheveled, extremely pale, and very thin. According to Dr. Leven, David does not have an eating disorder, but is unable to sufficiently nourish himself because of a deficit in terms of self-esteem and self-love. Despite this, David has demonstrated growth in terms of his enhanced ability toward self-examination and his less defensive behavior. The adolescent has formed an alliance with Dr. Leven and enjoys eating a large meal when they are together. Finally, David has used his participation in drama clubs and theatrical productions as a way to raise self-esteem and heighten socialization.
 In conversations with this evaluator, David states that he is "happier" now than when he was living with his mother. He discusses his thoughts and feelings about the current visitation arrangement with her in an optimistic manner. According to David, the freedom he has to initiate contact with his mother has lessened the animosity between them and he remains hopeful that their relationship will continue to progress. David reports no fondness for Frank DeFreitas, adding that he agreed to visit the home of his mother with the condition that Mr. DeFreitas refrain from initiating contact with him. The adolescent recognizes his father's imperfections, but sees the present living arrangement as the better of two alternatives. (Children's exhibit 2.)
The reference to Frank DeFreitas is the person who is Ms. Kane's live-in companion referred to in her financial affidavit as "Housemate." The testimony of David and Mr. Parry corroborate all that Ms. Walsh has stated in her report and the court so finds.
While Steven is performing above average academically and is a gifted athlete, he is extremely unhappy living with his mother. He perceives his mother as not listening to him, that she fails to consider his concerns. His mother has prevented him from seeing his father and prevented him from participating in sports as a CT Page 5256-UUU form of punishment. She presently has made plans for him to attend private boarding school for the eighth grade and has secured a large scholarship for him to attend even though he has expressed over and over to her that he does not wish to attend. He has good and valid reasons for not wishing to go, but the plaintiff has pursued this for him convinced that this is in his best interest, that he will gain tremendous advantage for college of his choice and for his general life betterment. Steven, however, is adamant. Mr. McCarroll, a family counselor who has met with Steven in the month of June, has testified that this could be a risk and that Steven might well suffer a depression. The plaintiff, however, has stated she will guarantee that this will not occur. The court is convinced that Steven truly does not want to go and that there is a risk to Steven that ought not to be taken.
At the conclusion of the evidence, the court made certain findings that it will here reiterate.
The court finds that each of the parties do in her or his own way have the best interests of the children at heart; that each of the parties love each of the children very, very much and that each of the parties are good parents.
Additionally, the court finds as follows:
1. That the defendant is too liberal in his disciplining of the children.
2. That the defendant has too few rules for the children to follow.
3. That the plaintiff is too strict in her disciplining of the children.
4. That the plaintiff in her zeal to seek the best for the children loses sight of the day-to-day lives of the children.
5. That the plaintiff does not devote enough personal time to the children.
6. That the children receive little nurturing and affection from their mother.
7. That the defendant lacks discipline and responsibility for CT Page 5256-VVV himself.
8. That the defendant is virtually a free spirit.
9. That it is in each of the children's best interest to be in the physical custody of the defendant.
While the defendant has his shortcomings, he is, at least at this time, the best party to have physical custody of David and Steven. It is hoped that he will be stricter than he has been in the past and will establish more rules than the two that he has imposed. David will be sixteen in November. While there has been no testimony regarding his driving, it is assumed that that issue will fast be upon him which will, of course, raise new reasons for greater attention, control by the defendant and accountability by the children.
The court, therefore, on docket entries nos. 266 and 269 enters the following orders:
1. The father, James Parry, shall have sole physical custody of the minor children who shall both reside with him. The children shall spend time with their mother, Patricia Kane, as each of them desires and as can be arranged to meet the mother's schedule. The father shall assure that the children have such access to their mother as they shall request and shall encourage a warm and supportive relationship between the mother and the children.
2. The father and the mother shall share joint legal custody, subject to the following decision-making procedure:
 a. The father shall be responsible for the daily routines of the minor children, including but not limited to attendance at school, participation in extra-curricular activities, medical and dental care and counseling; he shall consider suggestions from the mother in regard to such matters but shall have final authority to make the decision.
 b. Major decisions, as defined below, shall be made as follows: either parent may propose a major decision to be made by giving the other parent reasonable advance notice of the proposed course of action (minimum of two weeks, longer where decision requires extensive research CT Page 5256-WWW or consultation with experts); an exchange of the reasons for or against the proposed decision shall take place within two weeks of notice, either in writing or orally; if the parents are not then in agreement, and if the child concerned is currently in therapy, the parents shall consult once with the child's therapist; if the parents are still unable to agree, the father shall have the right to make the decision as proposed or to reject it.
 Major decisions include those decisions which have significant long-term consequences for the children and which are difficult to reverse once made, including but not necessarily limited to: placement in schools other than public school; non=emergency medical and dental treatment if the mother is responsible for payment of any portion of the care; change in either child's primary care physician, dental care provider or therapist; extended absences such as travel abroad which prevent or severely restrict contact with one or both parents; formal affiliation with an organized religion.
3. The father shall assure that David continues in therapy with Dr. Len Leven for as long as Dr. Leven believes such therapy is appropriate; the father shall encourage Steven to seek counseling with a professional to assist him in dealing with the emotional issues raised by the dissolution of his parents' marriage and the subsequent modification of custody. In particular, the father shall encourage Steven to obtain professional guidance in establishing a healthy relationship with his mother.
4. In the event either parent shall desire to relocate more than twenty (20) miles from his or her present residence, said parent shall give the other parent at least ninety (90) days written notice of the intent to relocate and the proposed new address.
5. Neither parent shall restrict the right of each child to contact the other parent by telephone at reasonable times and with reasonable frequency; neither parent shall denigrate the other parent in the presence of a child and each parent shall use his or her best efforts to foster a feeling of affection between each child and the other parent. CT Page 5256-XXX
6. Both parents shall have the right to attend public events in which the children participate or which are related to the children such as games and practices, school programs, parent/teacher conferences, church events, recitals, etc. Each parent shall inform the other parent of any such events as soon as they are scheduled. When such events occur, the parent with whom the child is then spending time must arrange for transportation to the event and home, even if the parent does not attend the activity.
7. The parents shall communicate as to the contact which the mother will have with each child not less often than three times per year in order to schedule any sharing of holidays or vacations. In general, such communication should take place as soon as the school calendar for the following year is available, before March 15 for summer scheduling and before January 15 for the spring term.
8. The defendant shall provide medical and dental insurance for the minor children. Any uninsured and unreimbursed medical and dental expenses including orthodontia shall be shared equally between the parties.
In connection with these motions, the court has also to consider the issue of attorney's fees as requested by the plaintiff and attorney's fees for counsel for the minor children. The court previously ordered the defendant to pay the sum of Five Thousand ($5,000) Dollars to the plaintiff for her attorney's fees.
Pertinent history of the parties and facts necessary for a determination of the issue of fees was previously noted by this court in its Memorandum of Decision dated September 27, 1995. However, the figures are now different so that the court's then findings are no longer relevant. Suffice to say that the plaintiff is a practicing attorney and member of the bar specializing in divorce mediation. Her net income after payment of office expenses excluding child support but including contribution from Mr. DeFreitas is $2238. It is to be noted that her contribution from Mr. DeFreitas is now $300 per month less and that her net monthly income is Eight Hundred ($800) Dollars less. She is fifty-four years of age and her health is observably good.
The defendant is a freelance writer and screenwriter. For the year 1995 he grossed $135,000-$150,000. His current financial CT Page 5256-YYY affidavit shows net monthly income of $7600. In the past he has not paid his federal and state income taxes nor self-employment and medicare taxes. He is 52 years of age and in observably good health.
At the time of this court's memorandum of decision on the issue of fees, the court ordered that the Five Thousand ($5,000) payment already made by the defendant to the plaintiff was to be taken into consideration at the time of the hearing on this matter. The court has taken this payment into consideration and has considered the provisions of § 46b-62 of the General Statutes together with the factors of § 46b-82 of the General Statutes. The court orders that each of the parties shall pay her or his own counsel fees.
The remaining issue is the question of counsel fees for counsel for the minor children. Attorney Ellen Wells has represented the minor children from the day of her appointment on May 2, 1994. Her amended affidavit of attorney's fees dated July 29, 1996 was filed on August 2, 1996. The court previously awarded fees in the total amount of $7,862.41. One Thousand Dollars was paid toward this amount by the defendant in July, 1994. The court ordered in its Memorandum of Decision on September 27, 1995 that the plaintiff pay $3,000 and the defendant pay $5,000 which after credit for the $1,000 paid resulted in an order of $4,000.
Each party paid only $200 on this order so that there remains an outstanding balance owed by the plaintiff of $2,700 (an additional $100 was apparently paid by the plaintiff) and $3,800 owed by the defendant. Attorney Wells has submitted time records justifying additional fees and disbursements of $13,185.53 from April 1, 1996, the date to which the original award was allowed. The court finds this amount, that is $13,185.53, to be a fair and reasonable charge for the services performed by Attorney Wells as counsel for the minor children.
The court has considered the provisions of § 46b-62 and the indices of § 46b-82 of the General Statutes in making this award and its allocation. The plaintiff shall pay the balance owed and the current amount (total $5,900) by paying $300 per month until this amount is fully paid. The defendant shall pay the balance owed and the current amount (total $13,785.53) paying $1,000 per month until this amount is fully paid. These monthly payments are to take priority over all other payments of the parties for any CT Page 5256-ZZZ other service or goods except for the amount the plaintiff shall pay to the defendant by way of support.
Finally, the court must consider an appropriate amount by way of support to be paid by the plaintiff to the defendant for the two minor children. In making this determination, the court has considered the provisions of § 46b-84 of the General Statutes together with the provisions of § 46b-215b of the General Statutes. Total weekly net income of the parties amounts to $2578. This is in excess of the guidelines. Total weekly support for two children is $480 for total net weekly income of both parties of $1750. (See Child Support and Arrearage Guidelines effective June 1, 1994.)
As is stated in the Child Support and Arrearage Guidelines:
 "Above $1,750, courts remain free to fashion appropriate child support awards on a case-by-case basis, provided the amount of support prescribed at the $1,750 level is presumed to be the minimum that should be ordered in such cases."
(Child Support and Arrearage Guidelines, effective June 1, 1994, section (e) Applicability of Child Support Guidelines, (1) Income Scope, page vii.) See Battersby v. Battersby, 218 Conn. 467
(1991).
Applying the factors of § 46b-84 (c) of the General Statutes and the presumption that total support for the two minor children should be at least $480, the court has determined that the plaintiff's percentage of that amount is twenty-nine (29%) percent based upon net monthly income of $2238 ($3438 on her financial affidavit less $1200 child support). Twenty-nine (29%) percent of $480 equals $141. The court orders that the plaintiff pay by way of support the sum of $150 per week to be paid to the defendant on Friday of each week commencing on August 16, 1996 and payable upon each Friday thereafter.
The remaining issue for determination by the court is appropriate orders on the arrearage. On November 2, 1995, the court determined the arrearage to be $30,423.46 (see Order, docket entry no. 311). The finding of arrearage, however, did not preclude the defendant from seeking credit for that period of time David resided with him. The court finds that payments were made by the defendant totalling $10,800 leaving a balance of CT Page 5256-AAAA $19,623.46. The payments totalling $10,800 were as recited by the defendant in the defendant's "Additional Proposed Orders": July, 1995 payment of $200; September 1, 1995 through June 15, 1996 of $7600 (9 1/2 months x $800); $2,000 tuition payment to Low-Heywood School and $1,000 lump sum payment.
The defendant seeks credit for the period March 17, 1994, the date of the motion, through August 30, 1995, the date the court ordered support for David to terminate. The issue is whether the support order for David may be retroactively terminated. Preliminarily the court does not possess the power to retroactively modify orders of alimony or child support. SeeShedrick v. Shedrick, 32 Conn. App. 147, 149 (1993). Section46b-86 (a) does, however, provide that alimony and support may be modified retroactively to the date a motion seeking modification of alimony or support was served upon the opposing party.
The original Motion for Modification of Custody was served upon the plaintiff on April 11, 1994. That motion contained the following request for relief: "The defendant also moves that the court order the plaintiff to pay child support to the defendant in accordance with the child support guidelines." The court finds that this was sufficient notice that the question of child support was in issue. Defendant's counsel repeatedly raised the issue of the order of child support continuing for David. As previously noted, he commenced living with his father in January, 1994. The matter first came before the court on April 18, 1994 and again on May 2, 1994 and May 9, 1994. The court order on May 9 was:
 "All right, without prejudice his residence can remain with the father. If the mother believes that's unfair, she can petition the court, so, without prejudice."
A contempt motion for failure to pay child support was heard by the court on April 10, 1995. At that time, the court (Petroni, J.) found an arrearage of $29,387 (page 5 of the transcript of proceedings before Petroni, J. on April 10, 1995). The defendant was ordered to make the current payment of $1200 per month for Steven who was still residing with his mother but did not terminate support for Steven (see page 7 of the transcript of proceeding before Judge Petroni). A second look at the arrearage was to be reviewed in January, 1996. The question of retroactivity of arrearage was left to another day (see page 10 of the transcript of proceedings before Judge Petroni). This was further clarified by Judge Petroni as follows: CT Page 5256-BBBB
 "Support for David can be retroactive to your March order to show cause. . . . That's an equitable credit, and it must be after a full hearing on the financial aspects of both parties at that time." Page 10 of the transcript of proceedings of April 10, 1995.
This court is a court of equity. Equitably the defendant should not suffer as a result of the inaction of the court at a prior time when the issue of temporary custody was before the court. The defendant should receive a credit for the period April 11, 1994 to August 30, 1995 when support for David in the amount of $1200 per month was terminated. This results in a credit of $19,800. Payments and credit, therefore, total $30,600. As previously noted, the arrearage found on November 2, 1995 was $30,423.46. The court finds that there is no arrearage due to the plaintiff.
The orders herein set forth with regard to custody are Yontef type orders which shall take effect regardless of any appeal in this case. Yontef v. Yontef, 185 Conn. 275 (1981).
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE